

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LANCE MANCUSO, et al.,                    )     Case No. CV 12-10360 FMO (JCx)
                                          )
                    Plaintiffs,           )
                                          )     **ORDER RE: PENDING MOTIONS**
        v.                                )
                                          )
MATT TAUBER, et al.,                      )
                                          )
                    Defendants.           )
_____   )

Having reviewed and considered plaintiffs' Renewed Application for Default Judgment by Court Against Defendant Route 17 Entertainment, LLC (Dkt. 89, "Application") and Motion for Award of Attorneys' Fees, Reimbursement of Costs and Incentive Awards (Dkt. 90, "Fees Motion"), along with the oral argument presented on April 10, 2014, November 13, 2014, January 22, 2015, March 19, 2015, and February 25, 2016, the court concludes as follows.

## INTRODUCTION

This is a wage-and-hour class action and collective action brought by plaintiffs Lance Mancuso ("Mancuso") and Heather Casterlin ("Casterlin") (collectively, "plaintiffs") against Route 17 Entertainment, LLC ("Route 17") and other defendants.  (See Dkt. 82, Court's Order of September 21, 2015, at 1).  On December 4, 2012, plaintiffs filed a complaint against Route 17, Matt Tauber ("Tauber"), Damon Alexander ("D. Alexander"), and J. T. Alexander ("J.T. Alexander"), asserting claims under the California Labor Code ("Labor Code") and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  (See id.).  Route 17 was served with the summons and Complaint on March 13, 2013, as well as by mail on March 14, 2013.  (See id. at 1-2).

1   Defendants, including Route 17, filed a motion to dismiss the complaint on May 3, 2013, but

2   withdrew it on May 22, 2013.  (See id. at 2).

3          On August 21, 2013, plaintiffs filed the operative First Amended Complaint ("FAC"), against

4   the same defendants, with the exception of Tauber, asserting claims for:  (1) continuing wages,

5   Cal. Lab. Code § 203; (2) failure to provide information on pay stubs, Cal. Lab. Code § 226; (3)

6   failure to pay minimum wage and overtime compensation, Cal. Lab. Code §§ 510 & 1194; (4)

7   violations of the FLSA; and (5) civil penalties under the Private Attorneys General Act ("PAGA"),

8   Cal. Lab. Code § 2698, et seq.  (See Dkt. 31, FAC at ¶¶ 41-63; Dkt. 82, Court's Order of

9   September 21, 2015, at 2).  Route 17 was served with the summons and FAC on November 13,

10  2013.  (See Dkt. 82, Court's Order of September 21, 2015, at 2).  On December 30, 2013, the

11  Clerk entered default against Route 17.  (See id.).

12         On September 21, 2015, the court granted plaintiffs' renewed motion to certify a class

13  action and motion granting collective action certification.  (See Dkt. 82, Court's Order of

14  September 21, 2015, at 19).  The court certified a Wage Statement Class, defined as "All

15  individuals who were issued one or more wage statements in connection with their employment

16  by RSE to provide services on the motion picture production entitled 'Ten Cent Pistol' during the

17  period from three years prior to the filing of the Complaint to December 12, 2014[,]" (id. at 20), and

18  a Late Pay Subclass, defined as "All members of the Wage Statement Class whose work on the

19  motion picture production was completed during the workweek August 5-11, 2012, yet who were

20  not timely paid for their services by August 16, 2012." (Id.).  The court also conditionally certified

21  a FLSA Collective Action Class, defined as "Employees who completed their work during the

22  workweek August 5-11, 2012, yet who were not timely paid for their services by August 16, 2012."

23  (Id.) (alteration marks omitted).   The court appointed Mancuso and Casterlin as class

24  representatives and the law firm of Harris & Ruble as counsel for the class and collective action.

25  (See id.). Finally, the court ordered class counsel to submit revised class and collective action

26  notices for the court's approval.  (See id.).

27         On October 23, 2015, the court approved the submitted notices and directed their

28  dissemination.  (See Dkt. 88, Court's Order of October 23, 2015).  The deadline for class members

1    to opt-out of the class action and for FLSA members to opt-in to the collective action was

2    December 29, 2015. (See id.). The court set February 25, 2016, as the date for the final fairness

3    hearing.[1] (See id.).

4        The court had previously denied plaintiffs' prior applications for default judgment. (See Dkt.

5    82, Court's Order of September 21, 2015, at 2-3 & 21). However, it permitted plaintiffs to file a

6    renewed application along with a renewed motion for attorney's fees, costs, and incentive awards.

7    (See id. at 21). Pursuant to the court's order, plaintiffs filed the instant Application and Fees

8    Motion. Plaintiffs seek judgment in the amount of $149,881.36. (See Dkt. 95, Plaintiffs'

9    Supplemental Brief in Support of Renewed Application for Default Judgment by Court Against

10   Defendant Route 17 Entertainment, LLC ("Supp. Br.") at 12). Plaintiffs also seek $67,619.50 in

11   attorney's fees, $1,361.87 in costs, and a $2,500 incentive award for each plaintiff. (See Dkt. 90,

12   Notice of Motion at 14-15).

13        Route 17 has not responded to any of the applications for default judgment, nor did it

14   appear at the hearings held on April 10, 2014, November 13, 2014, January 22, 2015, March 19,

15   2015, or February 25, 2016. (See Dkt. 82, Court's Order of September 21, 2015, at 3; Dkt. 94,

16   Court's Order of February 25, 2016).

17                                  **SUMMARY OF FACTS**

18        Mancuso and Casterlin were employed on the production of a motion picture tentatively

19   entitled "The Go-Getters" or "Ten Cent Pistol" (the "Production"). (See Dkt. 82, Court's Order of

20   September 21, 2015, at 3). Route 17, the production company for the Production, hired Mancuso

21   as a set medic on August 3, 2012, and terminated his employment two days later on August 5,

22   2012. (See id.). Mancuso was not provided any compensation for his work until on or after

23

24

_____

25      [1] Pursuant to the Court's Order of October 23, 2015, plaintiffs disseminated notice to the class

26   and collective actions members. (See Dkt. 82, Court's Order of October 23, 2015, at 20 (ordering
dissemination of notice); Dkt. 89, Application at 4 (stating that notice was published and mailed

27   on October 27, 2015)). According to plaintiffs, only two class members opted out, and two
individuals, in addition to Mancuso and Casterlin, opted into the FLSA collective action. (See Dkt.

28   89, Application at 4).

1  August 22, 2012.  (See id. at 4).  His regular rate of pay on the Production was $8.00 per hour.
2  (See id.).

3       Casterlin was employed as a script supervisor on the Production in July and August 2012.
4  (See Dkt. 82, Court's Order of September 21, 2015, at 4).  Her last day of work was August 5,
5  2012, but she did not receive her final paycheck until on or about August 22, 2012.  (See id.).  Her
6  regular rate of pay on the Production was $8.00 per hour.  (See id.).

7       Plaintiffs allege that despite being terminated from the Production on August 5, 2012, they
8  and the class members did not receive their final wages until on or after August 22, 2012, rather
9  than the "next regularly scheduled payday, which would have been on or about August 16, 2012."
10  (Dkt. 82, Court's Order of September 21, 2015, at 4).  Casterlin additionally alleges that she has
11  not yet received all wages due to her.  (See id.).  In addition to late payment of wages, plaintiffs
12  allege that Route 17, in violation of state labor law, "failed to provide information concerning the
13  name and address of the legal entity that was the employer" in the wage statements it issued to
14  plaintiffs and class members.  (Id.) (alteration marks omitted).

15  **LEGAL STANDARD**

16       Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against
17  whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that
18  failure is shown by affidavit or otherwise, the clerk must enter the party's default."  After the clerk
19  enters default pursuant to Rule 55(a), the court may enter a default judgment against the party.
20  See Fed. R. Civ. P. 55(b)(2).  Upon entry of default, the well-pleaded factual allegations of the
21  complaint are taken as true, with the exception of allegations concerning the amount of damages.
22  See Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977).  The scope of relief is limited
23  to the specific demand in the complaint.  See Fed. R. Civ. P. 54(c).

24       Even where well-pleaded allegations exist, "[t]he district court's decision whether to enter
25  a default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).
26  In exercising its discretion as to whether default judgment should be entered, the court considers
27  the following factors:  (1) the possibility of prejudice to plaintiffs; (2) the merits of plaintiffs'
28  substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

1  (5) the possibility of a dispute concerning material facts; (6) whether the default was due to
2  excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure
3  favoring decisions on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (the
4  "Eitel factors").

5  **DISCUSSION**

6  I.    DEFAULT JUDGMENT.

7        A.    Local Rule 55-1.

8        In this district, applications for default judgment must include:  "(a) [w]hen and against what
9  party the default was entered; (b) [t]he identification of the pleading to which default was entered;
10 (c) [w]hether the defaulting party is an infant or incompetent party[;] (d) [t]hat the Servicemembers
11 Civil Relief Act (50 App. U.S.C. § 521) does not apply; and (e) [t]hat notice has been served on
12 the defaulting party, if required by F.R.Civ.P. 55(b)(2)."  Local Rule 55-1.

13       Here, plaintiffs have satisfied the procedural requirements for entry of default judgment.
14 Specifically, plaintiffs have established that: (a) the Clerk entered default against Route 17, (Dkt.
15 39, Default by Clerk, filed on December 30, 2013); (b) the default is based on Route 17's failure
16 to respond to the FAC,[2] (see id.); (c) Route 17 is neither an infant nor an incompetent person, (see
17 Dkt. 91, Declaration of Alan Harris in Support of Plaintiffs' Renewed Application for Default
18 Judgment by Court Against Defendant Route 17 Entertainment ("Harris Decl.") at ¶ 3); (d) Route
19 17 is not in active military service (see id.); and (e) plaintiffs served Route 17 with notice of the
20 Application.  (See id. at ¶ 4).

21       B.    The Eitel Factors.

22       Having concluded that default was properly entered, the court will now determine whether
23 to enter default judgment against Route 17.

24
25
26       [2]    Although Route 17 responded to plaintiffs' initial Complaint, it did not respond to the FAC.
27 Defendant's failure to respond to the FAC warrants entry of default judgment.  See, e.g., Nexon
   Am. Inc. v. Kumar, 2012 WL 1116328, *3 (C.D. Cal. 2012) (entering default judgment based on
28 defendants' failure to respond to plaintiff's amended complaint).

5

1    **1.    The Possibility of Prejudice to Plaintiffs and Class Members**.

2    This factor considers whether plaintiffs and class members will suffer prejudice if default

3    judgment is not entered.  Here, plaintiffs and class members would suffer prejudice if default

4    judgment is not entered because they "would be denied the right to judicial resolution of the claims

5    presented, and would be without other recourse for recovery."  Electra Entm't Grp. Inc. v.

6    Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005).  Indeed, Route 17 has indicated it would not

7    participate in this litigation.  (See Dkt. 91, Harris Decl. at ¶ 4).  This factor weighs in favor of

8    granting default judgment.  See Li v. A Perfect Day Franchise, Inc., 2012 WL 2236752, *5 (N.D.

9    Cal. 2012) (finding this factor weighed heavily in favor of granting default judgment in a class

10   action).

11   **2.    The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the**

12   **Complaint**.

13   "Under an [Eitel] analysis, the merits of plaintiff[s'] substantive claims and the sufficiency

14   of the complaint are often analyzed together."  Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F.Supp.2d

15   1038, 1048 (N.D. Cal. 2010).  These two factors require plaintiffs to "state a claim on which [they]

16   may recover[.]"  Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978).  Accordingly, the court

17   will analyze each of plaintiffs' claims in turn.

18   a.    *Late Pay Subclass*.

19   (I).    *Waiting Time Penalties*.[3]

20   "An employee engaged in the production or broadcasting of motion pictures whose

21   employment terminates is entitled to receive payment of the wages earned and unpaid at the time

22   of the termination by the next regular payday."[4]  Cal. Lab. Code § 201.5(b).  "All wages . . . earned

23   by any person in any employment are due and payable twice during each calendar month, on days

24

25   [3]  Plaintiffs refer to this claim as "continuing wages."  (See Dkt. 31, FAC at ¶¶ 41-45; Dkt. 89,
     Application at 15).  However, because such claims are more commonly referred to as "waiting time

26   penalties," the court will refer to this claim as such.

27   [4]  "Next regular payday" is defined as "the day designated by the employer, pursuant to Section
     204, for payment of wages earned during the payroll period in which the termination occurs."  Cal.

28   Lab. Code § 201.5(a)(3).

1   designated in advance by the employer as the regular paydays." Cal. Lab. Code § 204(a).  "If an

2   employer willfully fails to pay, without abatement or reduction, in accordance with [§ 201.5], any

3   wages of an employee who is discharged or who quits, the wages of the employee shall continue

4   as a penalty from the due date thereof at the same rate until paid or until an action therefor is

5   commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

6       "A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when

7   an employer intentionally fails to pay wages to an employee when those wages are due."  8 CCR

8   § 13520.  Thus, the "employer's refusal to pay need not be based on a deliberate evil purpose to

9   defraud workmen of wages which the employer knows to be due."  Amaral v. Cintas Corp. No. 2,

10  163 Cal.App.4th 1157, 1201 (2008); see Li, 2012 WL 2236752, at *8 (same).  "However, a good

11  faith dispute that any wages are due will preclude imposition of  waiting time penalties[.]"  8 CCR

12  § 13520.

13      Here, the regularly scheduled payday for employees on the Production was Thursday of

14  each week. (See Dkt. 91, Harris Decl., Exh. 4 (Dkt. 91-1, Declaration of Lance Mancuso in Support

15  of Motion for Class Certification Against Defendant Route 17 Entertainment, LLC ("Mancuso

16  Decl.") at ¶ 3); id., Exh. 5 (Dkt. 91-1, Declaration of Heather Casterlin in Support of Motion for

17  Class Certification Against Defendant Route 17 Entertainment, LLC ("Casterlin Decl.") at ¶ 4)).

18  Plaintiffs allege that despite being terminated or discharged on August 5, 2012, they were not paid

19  until on or after August 22, 2012,[5] (see Dkt. 31, FAC at ¶¶ 13 & 43; see also Dkt. 91-1, Casterlin

20  Decl. at ¶ 4), and that class members were similarly not paid final wages until on or after August

21  22, 2012. (See Dkt. 31, FAC at ¶¶ 13, 29 & 43).  Moreover, plaintiffs allege that Route 17's failure

22  to make payments was willful.  (See id. at ¶ 29).  Since Route 17 has not presented a defense,

23  there is no good faith dispute as to whether wages were due.  Accordingly, the court is persuaded

24  that plaintiffs have adequately pleaded claims for waiting time penalties.

25

26      [5]  The FAC alleges that plaintiffs were not paid until "on or after August 22, 2012."  (Dkt. 31,

27  FAC at ¶¶ 11, 13, 43).  The declarations filed in support of the Fees Motion refer to August 23,
    2012, as the date of their final pay.  (See Dkt. 91-1, Mancuso Decl. at ¶ 4; Dkt. 91-1, Casterlin

28  Decl. at ¶ 4).

1              (ii).     *Liquidated Damages Pursuant to Cal. Lab. Code § 1194*.

2       Labor Code § 1194 provides that "any employee receiving less than the legal minimum

3 wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of this

4 minimum wage[.]" Cal. Lab. Code § 1194(a). Here, plaintiffs allege that they "worked many hours

5 without compensation for any of the work performed in or around September of 2012, [and that

6 Route 17] failed to timely pay Plaintiffs and the other members of the Class their minimum wages

7 and overtime wages as required by sections 510 and 1194 of the California Labor Code."[6] (Dkt.

8 31, FAC at ¶ 51). Accordingly, the court finds that plaintiffs have adequately alleged a claim for

9 liquidated damages for failure to pay minimum wage.[7]

10              b.    *Wage Statement Class*.

11       Labor Code § 226(a) requires an employer to "furnish each of his or her employees . . . an

12 accurate itemized statement in writing showing [among other things] (1) gross wages earned, (2)

13 total hours worked by the employee, except for any employee whose compensation is solely

14 based on a salary and who is exempt from payment of overtime . . . [and (3)] the name and

15 address of the legal entity that is the employer[.]" Cal. Lab. Code § 226(a). "An employee

16 suffering injury as a result of a knowing and intentional failure by an employer to comply with

17 subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the

18

19 _____

20    [6] In connection with this claim and other claims, plaintiffs refer to work performed in September 2012, (see, e.g., Dkt. 31, FAC at ¶¶ 51 & 57), which is at odds with the allegations that plaintiffs

21 and the class members concluded their employment with Route 17 in August and received final wages on or about August 22, 2012. (See id. at ¶¶ 11 & 13). However, considering the FAC as

22 a whole, including the general allegations, (see id.), the court recognizes plaintiffs' error and will not deny plaintiffs the relief they seek.

23

24    [7] Although plaintiffs refer to untimely payments of overtime wages in violation of Cal. Lab. Code § 510, they do not appear to seek recovery of the unpaid balance of such uncompensated

25 overtime. (See Dkt. 89, Application at 18-19). In any event, the court is not persuaded that plaintiffs have adequately alleged that they, or any class members, ever worked in excess of eight

26 hours in a day or 40 hours in a week for which they were not compensated at the appropriate overtime rate. There are no specific factual allegations of such unpaid overtime work. (See,

27 generally, Dkt. 31, FAC); see also Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir. 1988) (explaining that failure to allege a valid claim against the defaulting defendant is not

28 cured by evidence submitted at the default hearing).

1   initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each

2   violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars

3   ($4,000), and is entitled to an award of costs and reasonable attorney's fees."  Cal. Lab. Code §

4   226(e)(1).

5          Here, plaintiffs allege that Route 17 "never provided Plaintiffs and the other members of the

6   Class with a pay stub for the work they performed in or around September of 2012[.]"  (Dkt. 31,

7   FAC at ¶ 47).  Plaintiffs further allege that Route 17: "failed to provide information concerning the

8   name and address of the legal entity that is the employer, or any of the other required data[,]" (id.

9   at ¶ 27); "knowingly and intentionally failed and refused to identify itself or any other entity as the

10  responsible employer[,]" (id. at ¶ 48); and injured plaintiffs and the class members by depriving

11  them "of information to which they are legally entitled and causing confusion and wasted time as

12  a result, delaying their efforts to secure relief from the DLSE and/or unemployment insurance

13  benefits."  (Id.).  These allegations are sufficient to state a violation of Labor Code § 226.

14                        c.    *FLSA Collection-Action Class.*[8]

15         The FLSA provides that "[e]very employer shall pay to each of his employees . . . not less

16  than the minimum wage[.]"  29 U.S.C. § 206(b).  "Under the FLSA wages are 'unpaid' unless they

17  are paid on the employees' regular payday."  Biggs v. Wilson, 1 F.3d 1537, 1538 (9th Cir. 1993),

18  cert. denied, 510 U.S. 1081 (1994); see Rother v. Lupenko, 515 F.Appx. 672, 675 (9th Cir. 2013)

19  _____

20         [8] Although not addressed by plaintiffs, (see, generally, Dkt. 89, Application), the court finds that
21  the FLSA Collective Action Class should be given final certification.  As the court explained in its
    prior order, certification of a FLSA collective action involves a two-step process resulting in an
22  initial or conditional certification and final certification.  (See Dkt. 82, Court's Order of September
    21, 2015, at 7-8).  The court has conditionally certified the FLSA Collective Action Class.  (See id.
23  at 18-19).  While the second-stage analysis is generally utilized after discovery is completed and
    upon a motion for decertification, see Smith v. Bimbo Bakeries USA, Inc., 2013 WL 4479294, *2
24  (C.D. Cal. 2013) ("In the second stage, which is reached once discovery is complete and the
    action is ready to be tried, the party opposing class certification may move to decertify the class."),
25  here Route 17 has defaulted and has not challenged the court's conditional certification.
    Moreover, plaintiffs conducted discovery and obtained "a list of the case and crew members who
26  were employed by Defendant Route 17 on the Production as well as their earnings registers, time
27  cards, and other documents which provided relevant information concerning employee pay rates,
    and days and hours worked on the motion picture which is the subject of this lawsuit[.]"  (Dkt. 91,
28  Harris Decl. at ¶ 7).

("Although there is no provision in the FLSA that explicitly requires an employer to pay its employees in a timely fashion, this Circuit has read one into the Act.").  "Any employer who violates the provisions of section 206 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

Plaintiffs adequately allege that Route 17, as the production company, was an employer for purposes of the FLSA, see 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee[.]"); Lambert v. Ackerley, 180 F.3d 997, 1011-12 (9th Cir. 1999), cert. denied, 528 U.S. 1116 (2000) (definition of employer under FLSA "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes"), and that Route 17, "by not paying Plaintiffs . . . the wages due and owing to them, ha[s] violated the [FLSA] by failing to provide at least minimum wages to Plaintiffs[.]"  (Dkt. 31, FAC at ¶ 55; see id. at ¶¶ 43, 51).[9]

### 3.  **The Amount of Money at Stake.**

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc. v. California Sec. Cans, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." Truong Giang Corp. v. Twinstar Tea Corp., 2007 WL 1545173, *12 (N.D. Cal. 2007). "Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions." Warner Bros. Home Entm't. Inc. v. FilmAndMusicUSA, LLC, 2013 WL 4478956, *4 (C.D. Cal. 2013).

Here, plaintiffs seek $149,881.36, including prejudgment interest.  (See Dkt. 95, Supp. Br. at 12).  In addition to this amount, plaintiffs seek $73,981.37 in attorney's fees, costs, and incentive awards for plaintiffs.  (See Dkt. 90, Notice of Motion).  The amount of money at stake in not unreasonable and does not preclude entry of default judgment given the allegations in the

---

[9]  Plaintiffs' claim for PAGA penalties will be assessed in connection with remedies.

1    FAC, Route 17's conduct, and the third-party discovery conducted by plaintiffs.  Moreover, the

2    amount is reasonable given the fact that the class and collective actions have been certified.  This

3    factor weighs in favor of granting default judgment.

4         **4.**     **The Possibility of a Dispute Concerning Material Facts**.

5         As discussed above, all well-pleaded allegations in the complaint are taken as true, except

6    those relating to damages.  See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir.

7    1987).  In addition, "[t]he district court is not required to make detailed findings of fact."  Fair Hous.

8    of Marin v. Combs, 285 F.3d 899, 906 (9th Cir.), cert. denied 537 U.S. 1018 (2002).  Since Route

9    17 never answered the FAC and stopped participating in the action, it appears that there is no

10   genuine dispute over material facts.  This factor weighs in favor of default judgment.

11        **5.**     **Whether the Default Was Due to Excusable Neglect**.

12        Excusable neglect is an equitable concept that takes account of factors such as "prejudice,

13   the length of the delay and impact on judicial proceedings, the reason for the delay, including

14   whether it was within the reasonable control of the movant, and whether the movant acted in good

15   faith."  TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001), overruled on other

16   grounds by Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 121 S.Ct. 1322 (2001) (quoting

17   Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498

18   (1993)).

19        Here, while Route 17 initially participated in this action by filing a motion to dismiss, (see

20   Dkt. 18, Motion to Dismiss Plaintiffs' Complaint, or, in the Alternative, Petition to Compel

21   Arbitration), which it later withdrew, (see Dkt. 21, Notice of Withdrawal of Motion to Dismiss

22   Plaintiffs' Complaint or, in the Alternative, Petition to Compel Arbitration), it is clear from the record

23   that Route 17 has chosen not to further defend itself in this action.  According to plaintiffs' counsel,

24   they had previously communicated with Route 17's counsel regarding the possibility of obtaining

25   a default judgment and were informed that Route 17 "did not want [defense counsel] to take any

26   action in this case and that [defense counsel] advised [Route 17 and other defendants] that they

27   may be subject to a default judgment."  (Dkt. 91, Harris Decl. at ¶ 4).  In short, there is no evidence

28

1 that Route 17 failed to defend this action due to excusable neglect.  Thus, this factor weighs in
2 favor of default judgment.

3    6.   **The Strong Policy Favoring Decisions on the Merits**.

4    "Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d
5 at 1472.  However, "this preference, standing alone, is not dispositive." Kloepping v. Fireman's
6 Fund, 1996 WL 75314, *3 (N.D. Cal. 1996).  Route 17's failure to answer plaintiffs' FAC makes
7 a decision on the merits impractical, if not impossible.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.
8 Under Fed. R. Civ. P. 55(b), termination of a case before hearing the merits is allowed whenever
9 a defendant fails to defend an action.  The court, therefore, finds that entry of default judgment is
10 appropriate in this action as set forth above.

11    7.   **Summary of the Eitel Factors**.

12    The Eitel factors weigh heavily in favor of granting default judgment in this case.  The court
13 therefore addresses plaintiffs' requested remedies below.

14    C.   Remedies.

15    A plaintiff seeking default judgment is "required to prove all damages sought in the
16 complaint." Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 498 (C.D. Cal.
17 2003).  However, "[w]here the employer's records are inaccurate or inadequate and the employee
18 cannot offer convincing substitutes, the solution is not to penalize the employee by denying him
19 any recovery on the ground that he is unable to prove the precise extent of uncompensated work."
20 Brock v. Seto, 790 F.2d 1446, 1448 (9th Cir. 1986) (alteration marks omitted).  "[A]pplying the
21 normal burden of proof in such circumstances would unfairly penalize an employee for the
22 employer's failure to keep proper records and would allow the employer to keep the benefits of
23 the employee's labors without paying full compensation."  Amaral v. Cintas Corp. No. 2, 163
24 Cal.App.4th 1157, 1189 (2008); see also Brock, 790 F.2d at 1448 (holding that an employee can
25 meet his burden under the FLSA "if he proves that he has in fact performed work for which he was
26 improperly compensated and if he produces sufficient evidence to show the amount and extent
27 of that work as a matter of a just and reasonable inference") (emphasis in original).  "Unless the
28 employer can provide accurate estimates [of hours worked], it is the duty of the trier of facts to

draw whatever reasonable inferences can be drawn from the employees' evidence[.]" <u>Brock</u>, 790
F.2d at 1448-49 (alteration marks in original); <u>see</u> <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 914-15 (9th
Cir. 2003) ("[A]pproximated awards [are allowed] where plaintiffs can establish, to an imperfect
degree of certainty, that they have performed work and have not been paid in accordance with the
FLSA.  In such instances, the only uncertainty is the amount of damage, not the fact that damages
are due.  Where an approximate award based on reasonable inferences forms a satisfactory
surrogate for unquantified and unrecorded actual times, an approximated award is permissible.")
(internal quotation marks, citations, alteration marks, and emphasis omitted).

　　　　Because Route 17 stopped participating in this action early in the litigation, the court will
rely on the evidence provided by plaintiffs in evaluating plaintiffs' requests for unpaid wages,
liquidated damages, and penalties.

　　　　　　　1.　　**Late Pay Subclass**.

　　　　　　　　　a.　　*Waiting Time Penalties*.

　　　　"If an employer willfully fails to pay, without abatement or reduction, . . . any wages of an
employee who is discharged or who quits, the wages of the employee shall continue as a penalty
from the due date thereof at the same rate until paid or until an action therefor is commenced; but
the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).

　　　　Mancuso states that his "last day of work was August 5, [2012,]" and that his "wages were
due to [him] no later than August 16, 2012."  (Dkt. 91-1, Mancuso Decl. at ¶ 4 & Exh. 1 (Pay
Stub)).  The Late Pay Class members were similarly discharged on August 5, 2012, and did not
receive their final wages in a timely manner.  Thus, for each class member, plaintiffs determined
his or her daily wage and multiplied it by seven (days) to yield the § 203 penalties due to each.[10]
(<u>See</u> Dkt. 91, Harris Decl. at ¶ 9; Dkt. 95-1, Supplemental Declaration of Alan Harris in Support
of Plaintiffs' Renewed Application for Default Judgment by Court Against Defendant Routs 17
Entertainment ("Supp. Harris Decl."), Exh. 3 (Supp. Late Pay Subclass Damages Analysis)).

---

　　　[10]  This amount reflects Casterlin's daily wage multiplied by 30 days, given her allegation that
she has yet to be paid all earned wages.  (<u>See</u> Dkt. 31, FAC at ¶¶ 11 & 43; Dkt. 91-1, Casterlin
Decl. at ¶ 7; Dkt. 91, Harris Decl. at ¶ 9).

1    Accordingly, the 43 members of this class are owed $73,319 in waiting time penalties.[11] (See Dkt.

2    95, Supp. Br. at 3; Dkt. 95-1, Exh. 3, Supp. Late Pay Subclass Damages Analysis).

3                    b.      *Liquidated Damages Pursuant to Cal. Lab. Code § 1194.*

4           Labor Code § 1194.2 entitles employees "to recover liquidated damages in an amount

5    equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2(a).  Plaintiffs

6    seek liquidated damages pursuant to § 1194 due to defendants' failure "to provide Plaintiffs . . .

7    timely payment of their minimum and overtime wages notwithstanding sections 510, 558 and 1194

8    of the California Labor Code."  (Dkt. 89, Application at 17-18).  However, they correctly appear to

9    limit their request to unpaid minimum wages.  (See id. at 18); see § 1194.2 ("Nothing in this

10   subdivision shall be construed to authorize the recovery of liquidated damages for failure to pay

11   overtime compensation.").

12          Plaintiffs calculated the liquidated damages owed by multiplying the total number of hours

13   worked and the applicable state minimum wage, $8.00.  (See Dkt. 89, Application at 18-19; Dkt.

14   91, Harris Decl. at ¶ 9).  Accordingly, the 43 members of the Late Pay Subclass are owed

15   $8,335.[12]  (See Dkt. 95, Supp. Br. at 5; Dkt. 95-1, Exh. 3, Supp. Late Pay Subclass Damages

16   Analysis).

17                  2.      **Wage Statement Class**.

18          "An employee suffering injury as a result of a knowing and intentional failure by an employer

19   to comply with [§ 226(a)] is entitled to recover the greater of all actual damages or fifty dollars

20   ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per

21   employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of

22   four thousand dollars ($4,000)[.]" Cal. Lab. Code § 226(e).

23   ————————————————

24      [11]  Because Casterlin has not been paid all of her wages, she is entitled to 30 days of waiting

25   time penalties pursuant to California Labor Code § 203(a).  Thirty days at $196.32 per day
     amounts to $5,889.60 (196.32 x 30 = 5,889.60), which plaintiffs have rounded down to $5,889.

26   (See Dkt. 95, Supp. Br. at 2-3; Dkt. 95-1, Exh. 3, Supp. Late Pay Subclass Damages Analysis).

27      [12]  This amount also includes $888.40 in unpaid wages Casterlin contends are outstanding,
     rounded down to the nearest whole dollar figure.  (See Dkt. 91-1, Casterlin Decl. at ¶ 7; Dkt. 89,

28   Application at 18).

1    Based on a review of payroll data obtained from a third party, plaintiffs have determined the

2    number of wage statements members of the Wage Statement Class have received, and calculated

3    the § 226(e) penalties accordingly.  As a result, the total amount due to the class is $32,650.  (See

4    Dkt. 89, Application at 21; Dkt. 95-1, Exh. 5 (Supp. Wage Statement Class Damages Analysis)).

5    However, plaintiffs seek only $25,000, rather than the entire $32,650, given the allegations in the

6    FAC regarding the amount sought with respect to this claim.  (See Dkt. 95, Supp. Br. at 8; Dkt. 31,

7    FAC at p. 19).

8                        3.    **FLSA Collection-Action Class**.

9    Plaintiffs seek liquidated damages for Route 17's failure to pay minimum and overtime

10   wages under the FLSA.  (See Dkt. 89, Application at 10-11).  The FLSA mandates that when

11   minimum or overtime wages are not properly provided to employees, liquidated damages shall be

12   additionally awarded to such employees in the amount equal to the amount already owed.  See

13   29 U.S.C. § 216(b).  Liquidated damages, however, are discretionary where the employer proves

14   that the failure to pay wages was both in good faith and based upon such reasonable grounds that

15   it would be unfair to impose liquidated damages upon the employer.  See 29 U.S.C. § 260.

16   Given that Route 17 has ceased defending this action, it cannot show it acted in good fath.

17   According to plaintiffs, in addition to themselves, only two putative collective action plaintiffs opted-

18   in after receiving notice of the action.  (See Dkt. 89, Application at 4 & 20) (identifying Joseph

19   Bodle and Mynka Draper as opt-ins).  The court, therefore, will award liquidated damages to the

20   FLSA Collective-Action Class in the amount of $918, which is based on the total number of hours

21   of the opt-in plaintiffs multiplied by $7.25.  (See Dkt. 95, Supp. Br. at 6; Dkt. 95-1. Exh. 4 (Supp.

22   FLSA Damages Analysis)).

23                        4.    **PAGA Penalties**.

24   Plaintiffs also assert a PAGA claim.  (See Dkt. 31, FAC at ¶¶ 60-63).  The PAGA provides

25   that "any provision of [the California Labor Code] that provides for a civil penalty to be assessed

26   and collected by the Labor and Workforce Development Agency or any of its departments,

27   divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an

28   alternative, be recovered through a civil action brought by an aggrieved employee on behalf of

15

himself or herself and other current or former employees[.]" Cal. Lab. Code § 2699(a).  The PAGA also provides the applicable civil penalty if a particular California Labor Code provision does not specify one.  See Cal. Lab. Code § 2699(f)(2) ("If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.").  Civil penalties recovered under the PAGA are distributed 75 percent to the Labor and Workforce Development Agency ("LWDA") and 25 percent to the aggrieved employees.  See Cal. Lab. Code § 2699(I).

Before an employee may bring a PAGA suit, he must "give written notice . . . to the [LWDA] and the employer of the specific provisions of [the California Labor Code] alleged to have been violated, including the facts and theories to support the alleged violation."  Cal. Lab. Code § 2699.3(a)(1).  In addition, the PAGA gives the trial court discretion to deny or reduce any award of penalties upon a proper showing.  See Cal. Lab. Code § 2699(e)(1).

Plaintiffs allege that they provided the requisite notice to the LWDA, (see Dkt. 31, FAC at ¶ 61), and that the LWDA stated in its response that it did "not intend to investigate Plaintiffs' allegations."  (See id. at ¶ 62 & Exh. 1).  Having reviewed plaintiffs' calculations, (see Dkt. 95-1, Exh. 3 (Supp. Late Pay Subclass Damages Analysis); id., Exh. 5 (Supp. Wage Statement Class Damages Analysis)), the court awards PAGA penalties in the amount of $42,000, of which 75% shall be paid to the LWDA.

### 5.   **Prejudgment Interest**.

Plaintiffs seek prejudgment interest with respect to Casterlin's claims for unpaid wages.  (See Dkt. 95, Supp. Br. at 10).  Based on the $888.40 still owed to Casterlin, the court will award $309.36 in prejudgment interest.  See Cal. Lab Code § 1194(a) ("[A]ny employee receiving less than the legal minimum wage . . . is entitled to recover in a civil action the unpaid balance of the full amount of th[e] minimum wage or overtime compensation, including interest thereon[.]").

II.     ATTORNEY'S FEES AND COSTS AND INCENTIVE AWARDS.

        A.      Fees & Costs.

        Plaintiffs are entitled to attorney's fees under the FLSA and California Labor Code.  See 29 U.S.C. § 216(b); Fed. R. Civ. P. 23(h); Cal. Lab. Code §§ 1194(a), 226(e)(1) & 2699(g); see also Newhouse v. Robert's Ilima Tours, Inc., 708 F.2d 436, 441 (9th Cir. 1983) ("The FLSA grants prevailing plaintiffs a reasonable attorney's fee."); Drumm v. Morningstar, Inc., 695 F.Supp.2d 1014, 1018 (N.D. Cal. 2010) (noting that under California law, awarding attorney's fees is "mandatory" in unpaid wage claims).

        In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees with respect to the state-law claims.[13]  See Mangold v. Cal. Public Util. Comm'n, 67 F.3d 1470, 1478 (1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); Rodriguez v. Disner, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees.").  The California Supreme Court has held that, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff . . . for the benefit of all results in the creation . . . of that fund, such plaintiff . . . may be awarded attorney's fees out of the fund."  21st Century Ins. Co. v. Superior Court, 47 Cal.4th 511, 520 (2009) (alteration marks omitted).  A common fund results when "the activities of the party [seeking] fees have resulted in the . . . recovery of a certain or easily calculable sum of money - out of which . . . 'fund' the fees are to be paid."  Schiller v. David's Bridal, Inc., 2012 WL 2117001,*15 (E.D. Cal. 2012) (quoting Serrano v. Priest, 20 Cal.3d 25, 35 (1977)).  "California courts employ two methods when calculating a reasonable award of attorneys' fees in common

---

[13]  Additionally, in default judgment actions, the court is required to award attorney's fees pursuant to the fee schedule provided in Local Rule 55-3.  According to this fee schedule, where a judgment is over $100,000, reasonable attorney's fees will be $5,600 plus 2% of the amount over $100,000.  See Local Rule 55-3.  However, "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment to have the attorney's fee fixed by the Court.  The Court shall hear the request and render judgment for such fee as the Court may deem reasonable."  Id.

1  fund actions." Schiller, 2012 WL 2117001, at *15.  The first method "calculates attorneys' fees

2  based on a percentage of the benefit bestowed upon the class[,] and [t]he second . . . utilizes the

3  lodestar method determined by multiplying the hours counsel reasonably expended by a

4  reasonable hourly rate, which may then be enhanced by a multiplier."  Id.

5       Plaintiffs' counsel seek fees pursuant to the second method – the lodestar.  (See Dkt. 90,

6  Fees Motion at 10-13).  To calculate a fee award under the lodestar method, under both state and

7  federal law, the court multiplies the number of reasonable hours expended by a reasonable hourly

8  rate.  See Ketchum v. Moses, 24 Cal.4th 1122, 1131-32 (2001); Calvo Fisher & Jacob LLP v.

9  Lujan, 234 Cal.App.4th 608, 619 (2015) (same); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029

10 (9th Cir. 1998) (same); Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013) ("Under

11 the lodestar method, the district court multiplies the number of hours the prevailing party

12 reasonably expended on the litigation by a reasonable hourly rate.") (internal quotation marks

13 omitted); see also Haworth v. State of Nev., 56 F.3d 1048, 1051 (9th Cir. 1995) (holding that "[t]he

14 case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes[,]"

15 including FLSA) (internal quotation marks omitted); Li, 2012 WL 2236752, at *20 (applying lodestar

16 method to default judgment in class action asserting both state law and FLSA claims).  The

17 product of the computation – the lodestar figure – is a presumptively reasonable fee."[14] Gonzalez,

18 729 F.3d at 1202.

19      A party seeking attorney's fees bears the burden of demonstrating that the rates requested

20 are "in line with the prevailing market rate of the relevant community."  Carson v. Billings Police

21 Dep't, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks omitted).  "Generally, when

22 determining a reasonable hourly rate, the relevant community is the forum in which the district

23 court sits."  Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008).  Typically,

24 "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the

25

26      [14]  Once the lodestar has been determined, the "figure may be adjusted upward or downward
   to account for several factors including the quality of the representation, the benefit obtained for
27 the class, the complexity and novelty of the issues presented, and the risk of nonpayment."
   Hanlon, 150 F.3d at 1029; see also Ketchum, 24 Cal.4th at 1132 (explaining lodestar may be
28 adjusted by the court based on a number of factors).

community, and rate determinations in other cases, . . . are satisfactory evidence of the prevailing market rate."  United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

Here, plaintiffs' counsel seek $67,619.50 in attorney's fees and $1,361.87 in costs.  (See Dkt. 90, Fees Motion at 11 & 14).  In support of their request, plaintiffs' counsel have provided detailed billing records, (see Dkt. 91-1, Harris Decl. at Exh. 6), accompanied by supporting declarations regarding counsels' experience and qualifications, hours expended, and billing rates. (See, generally, Dkt. 91, Harris Decl. at ¶¶ 13-23; Dkt. 91-1, Declaration of Peter D. Zeughauser ("Zeughauser Decl.")).[15]  Having reviewed  counsel's billing records and declarations  and the file in this matter, the court finds the number of hours expended litigating this case and the hourly rates charged to be reasonable.  See, e.g. Powell v. Blackrock Asset Mgmt., LLC, 2011 WL 4551450, *5 (C.D. Cal. 2011) (applying lodestar method in a default judgment proceeding instead of the fee schedule in Local Rule 55-3).  Moreover, the court finds the costs incurred to be reasonable.

B.      Incentive Awards.

Plaintiffs request that the court grant an incentive award of $2,500 for each class representative – Mancuso and Casterlin.  (See Dkt. 90, Fees Motion at 14).  However, plaintiffs will be entitled to collect such awards only after all class and collective-action members have been paid in full.  (See id. at 15).  Given the posture of this case, and the work and risk undertaken by Mancuso and Casterlin in prosecuting this action, (see Dkt. 91-1, Mancuso Decl. at ¶ 9; Dkt. 91-1, Casterlin Decl. at ¶ 12; Dkt. 90, Fees Motion at 14-15), the court will grant the request for incentive awards.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

_____

[15] Zeughauser's declaration addresses the reasonableness of plaintiffs' counsel's hourly rates. (See Zeughauser Decl. at ¶¶ 9-11).

1. Plaintiffs' Renewed Application for Default Judgment By Court Against Defendant Route 17 Entertainment, LLC **(Document No. 89)** is **granted** as set forth in this Order.  Defendant shall pay: **$118,381.36** to plaintiffs, class members, and collective action members; and **$31,500.00** to the California Labor Workforce and Development Agency.

2. Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Costs and Incentive Awards **(Document No. 90)** is **granted** as set forth in this Order.  Plaintiffs' counsel, Harris & Ruble, is awarded attorney's fees **$67,619.50**, and costs in the amount of **$1,361.87** from defendant.  Class Representatives Lance Mancuso and Heather Casterlin are each awarded an incentive award of **$2,500.00**, to be paid by defendant.

3.  To the extent class counsel is able to collect on the judgment, distribution of the collected funds shall be performed in accordance with the Notice of Class Action Lawsuit and Notice of Federal Fair Labor Standards Act Collective Action approved by this Court on October 22, 2015 [Doc. 88].

4.  Judgment shall be entered accordingly.  Plaintiffs shall serve Route 17 with a copy of this Order and the Judgment in such a manner as to make them operative in any future proceedings.

Dated this 31st day of May, 2016.


_____
/s/
Fernando M. Olguin
United States District Judge